IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | NO. CR 11-2918 RB |
| ) | |
| TERRENCE CHARLES BLAKE, ) | |
| ) | |
| Defendant. ) | |

**FINDINGS OF FACT AND CONCLUSIONS OF LAW
AND ORDER DENYING MOTION TO SUPPRESS**

**THIS MATTER** is before the Court on Defendant's Motion to Suppress Statements [Doc. 28], filed on March 6, 2012. The Court held an evidentiary hearing on April 2, 2012. Having considered the submissions of counsel, evidence, relevant law, and being otherwise fully advised, the Court issues these findings of fact and conclusions of law and denies Defendant's motion.

**FINDINGS OF FACT**

1. The Indictment charges Defendant with aggravated sexual abuse, in violation of 18 U.S.C. §§ 1153, 2241(a), and 2246(2)(A). In his motion, Defendant moved to suppress his statement made after he invoked his right to counsel. At the suppression hearing, Defendant also implied that his statement was involuntary. The Government responded that the request for counsel was equivocal and the statement was voluntary.

2. Bureau of Indian Affairs (BIA) Special Agents Steven Kamerzell and Randy Vettleson testified at the hearing. Special Agent Kamerzell has been employed by BIA in this capacity since September 26, 2010, and assigned to the Mescalero Reservation in New Mexico since that date. Special Agent Kamerzell was trained in criminal investigations at the Federal Law Enforcement Training Center in Glynn County, Georgia; and he has undergone additional training

since then.  Special Agent Vettleson has been assigned to the Mescalero Reservation since June 2005, employed by the BIA since June 2000, and has been an investigator for sixteen years.  At the hearing, Government's Exhibits 1, 2, 2A, 3, 4, and 5 were admitted without objection.

3. On May 13, 2011, at approximately 5:00 a.m., the mother of "Jane Doe" called the Mescalero Police Department to report that Jane Doe, an adult, had been sexually assaulted. (Govt. Ex. 3).  Jane Doe's brother explained that Defendant was the culprit. (*Id.*)  Special Agent Kamerzell went to Defendant's place of employment, the sawmill on the Mescalero Reservation.  Special Agent Kamerzell saw Defendant's red Ford Focus and found Defendant sitting nearby. (*Id.*)  Special Agent Kamerzell asked Defendant where he had been the previous night and what he had done.  Defendant stated he had been drinking at a sports bar with a friend.

4. The agents asked Defendant for consent to search his vehicle.  Defendant agreed to the search and stated that he had nothing to hide.  After speaking with Defendant, Special Agent Kamerzell placed Defendant under tribal arrest and informed him of his rights.  Special Agent Kamerzell asked Defendant if he understood his rights and Defendant affirmatively nodded.  Defendant stated that he was willing to speak with the agents without an attorney present.  After making a statement, Defendant was transported to the Lincoln County Detention Center.

5. Later that day, Special Agent Kamerzell and BIA Special Agent Randy Vettleson went to the Lincoln County Detention Center and asked Defendant if he would consent to an exam by a Sexual Assault Nurse Examiner.  Defendant agreed and he was transported to Alamogordo for the examination.  After the examination, Special Agents Kamerzell and Vettleson asked Defendant if he would speak with them.  Defendant agreed, and they took him to the Otero County Sheriff's Office to conduct the interview.

6.	When they arrived at the Otero County Sheriff's Office, Special Agents Kamerzell and Vettleson advised Defendant of his *Miranda* rights. Special Agent Kamerzell read an "Interrogation: Advice of Rights" form aloud to Defendant. (Govt. Ex. 1.) Defendant nodded affirmatively that he understood and initialed each right and waiver of rights, and signed the waiver form. A copy of the signed waiver form was admitted at the suppression hearing. (Govt. Ex. 1). Special Agents Kamerzell and Vettleson interviewed Defendant and the Otero County Sheriff's Office recorded the interview. After the interview, Defendant was transported back to the Lincoln County Detention Center.

7.	On May 19, 2011, Special Agents Vettleson and Kamerzell returned to the Lincoln County Detention Center to interview Defendant. Special Agent Vettleson reminded Defendant of his rights from the interview of May 13, 2011. They asked him if he recalled his rights and Defendant indicated that he did recall and understand his rights. Special Agent Vettleson asked Defendant if he wanted his rights to be read to him again. Defendant stated that he did not need to have his rights read to him again and agreed to speak with Special Agents Vettleson and Kamerzell.

8.	Special Agents Vettleson and Kamerzell interviewed Defendant in an office at the Lincoln County Detention Center. The room was about fifteen feet by twenty feet. During the interview, Special Agents Vettleson and Kamerzell sat side by side near the door, which was closed. Defendant sat in a chair, about three to four feet from each agent, with his back to the wall. In compliance with detention center policy, the agents were unarmed. The agents wore plain clothes with their badges displayed on their belts.

9.	Approximately three to five minutes into the interview, Defendant stated that "maybe I should get a lawyer" and "I think I need a lawyer." Both witnesses at the suppression hearing

3

testified that Defendant used these words and their testimony was undisputed. At this point, the agents stopped the interview, stood up, and prepared to leave. Special Agent Vettleson told the Defendant that he could get a lawyer if he wanted one, but if he wanted a lawyer, the interview with the agents could not continue. Special Agent Vettleson stated that Defendant was going to need a lawyer. Special Agent Vettleson asked Defendant if he wanted a lawyer and Defendant stated that he did not want a lawyer and continued to speak with the agents. Defendant admitted that he had sexual intercourse with Jane Doe. According to Defendant, Jane Doe consented at first, but then he could tell she did not want to continue having intercourse and he forced her to continue for approximately two minutes. Although the agents did not record the interview with Defendant, they videotaped Defendant summarizing what he said during the interview after the interview ended. (Govt. Exs. 2, 2A, and 5).

    10.    During the interview, the agents did not touch Defendant, except that Agent Vettleson shook Defendant's hand. Agent Vettleson raised his voice slightly at Defendant near the end of the interview, but neither agent shouted or yelled at Defendant. The entire interview lasted approximately one hour.

## CONCLUSIONS OF LAW

    1.    The Fifth and Fourteenth Amendments to the United States Constitution provide the accused a "right to have counsel present during custodial interrogation." *Edwards v. Arizona*, 451 U.S. 477, 481 (1981). If a defendant requests counsel during a custodial interrogation, the defendant is "not subject to further interrogation by the authorities until counsel has been made available to him, unless the accused himself initiates further communication, exchanges, or conversations with

the police." *Id.*, 451 U.S. at 484–85. In *Miranda v. Arizona*, 384 U.S. 436, 474 (1966), the Supreme Court stated:

> If the individual states that he wants an attorney, the interrogation must cease until an attorney is present. At that time, the individual must have an opportunity to confer with the attorney and to have him present during any subsequent questioning. If the individual cannot obtain an attorney and he indicates that he wants one before speaking to police, they must respect his decision to remain silent.

*Id.*

2. To be effective, the request for counsel must be clear and unequivocal. *See Davis v. United States*, 512 U.S. 452, 459 (1994). "Invocation of the *Miranda* right to counsel 'requires, at a minimum, some statement that can reasonably be construed to be an expression of a desire for the assistance of an attorney.' " *Davis*, 512 U.S. at 459. "If an accused makes a statement concerning the right to counsel 'that is ambiguous or equivocal' or makes no statement, the police are not required to end the interrogation, or ask questions to clarify whether the accused wants to invoke his or her *Miranda* rights." *Berghuis v. Thompkins*, ____ U.S. ___, 130 S.Ct. 2250, 2260-61 (2010) (citations omitted).

3. The applicability of the rule that law enforcement cease custodial interrogation upon a clear request for counsel "requires courts to 'determine whether the accused actually invoked his right to counsel.' " *Davis*, 512 U.S. at 458 (citations omitted). A court's inquiry into whether the accused invoked the right to counsel is "objective." *Id*. An individual's "ambiguous" or "equivocal" references to an attorney, regarding which "a reasonable officer in light of the circumstances would have understood only that the suspect *might* be invoking the right to counsel," do not give rise to an invocation of the right to counsel such that police must cease questioning. *Davis*, 512 U.S. at 459 (emphasis in original).

4. In this case, Defendant stated that "maybe I should get a lawyer" and "I think I need

5

a lawyer." The Supreme Court has held that a defendant's statement "[m]aybe I should talk to a lawyer" was not a clear and unambiguous request for counsel. *Davis v. United States*, 512 U.S. 452, 455 (1994). The Tenth Circuit has held that a defendant's statement that "I might want to talk to an attorney" was not a clear invocation. *United States v. Zamora,* 222 F.3d 756, 765–66 (10th Cir. 2000). In this case, Defendant's statements that "maybe I should get a lawyer" and "I think I need a lawyer" were as ambiguous and equivocal as the statements in *Davis* and *Zamora.* Therefore, because Defendant did not make an unequivocal request for counsel, the agents were not required to cease questioning.

5. At the suppression hearing, defense counsel asked the Court to consider the voluntariness of the statement. A statement to law enforcement is involuntary when "the government obtained the statements by physical or psychological coercion or by improper inducement so that the suspect's will was overborne." *United States v. Erving L.,* 147 F.3d 1240, 1248-49 (10th Cir. 1998). The Tenth Circuit has identified the following factors as helpful in assessing whether a particular statement was the product of coercion or an overborne will: "(1) the age, intelligence, and education of the defendant; (2) the length of detention; (3) the length and nature of the questioning; (4) whether the defendant was advised of his constitutional rights; and (5) whether the defendant was subjected to physical punishment." *United States v. Toles*, 297 F.3d 959, 966 (10th Cir. 2002).

6. Defendant is an adult and was alert at the time he gave his statement. The interview lasted approximately one hour. Special Agent Kamerzell informed Defendant of his rights at the time of his arrest on May 13, 2011. Later that same day, at the Otero County Sheriff's Office, Special Agent Kamerzell read the waiver of rights form aloud to Defendant. Defendant

demonstrated that he understood his rights by initialing the rights and the waiver and signing the form. When Special Agent Vettleson reminded Defendant of his rights on May 19, 2011, Defendant affirmatively indicated that he understood his rights. The interview on May 19, 2011, lasted approximately one hour. Neither agent coerced Defendant into making the statements. Defendant was not subjected to undue threats or to any physical punishment. Based on the totality of the circumstances surrounding the interview, the Government has established that the statement was voluntary.

**WHEREFORE,**

**IT IS ORDERED** that Defendant's Motion to Suppress Statements [Doc. 28], filed on March 6, 2012, is **DENIED**.

_____

**ROBERT C. BRACK**
**UNITED STATES DISTRICT JUDGE**